In The United States District Court
For the Southern District of Texas
Houston Division

| | | |
|---|---|---|
| AUDRY L RELEFORD, JR.,<br>Individually,<br>and as Representative of the Estate of<br>KENNETH BRIAN RELFORD<br><div align="right">*Plaintiff*</div> | §<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:14-cv-02810 |
| v. | §<br>§ | |
| CITY OF HOUSTON<br>and<br>JASON ROSEMON<br><div align="right">*Defendants*</div> | §<br>§<br>§<br>§<br>§<br>§ | Honorable Keith P. Ellison |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Plaintiff AUDRY L. RELEFORD, JR., Individually and as Representative of the Estate of KENNETH BRIAN RELEFORD complaining of the CITY OF HOUSTON and JASON ROSEMON and for cause of action would show the following:

### A. Introduction

1.      This case is about a Houston police officer who shot and killed Kenneth Brian Releford. The officer shot Kenny multiple times in front of

his home. Kenny was unarmed. This case is also about the City of Houston's policies that led to Kenny's death. This shooting incident was the legal cause of Kenneth Brian Releford's death. Accordingly, this action is brought for violations of the United States Constitution and Texas law. The Defendants violated Kenny's rights under the Fourth Amendment of the United States Constitution by using excessive force when attempting to arrest, seize, search, or make an investigatory stop of Kenny. And so Plaintiff brings this action for compensatory damages under 42 U.S.C. § 1983 because Defendants jointly and severally deprived Kenny of his constitutionally guaranteed and federally protected right to be free from unreasonable seizure and unreasonable and excessive force. U.S. Const. amend. IV. He also brings this suit for personal injuries actionable under Texas law for harm suffered by Plaintiff as a result of the unreasonable search and seizure, personal injury, and wrongful death of Plaintiff's decedent, Kenneth Brian Releford.

2.      Plaintiff Audry L. Releford, Jr. is the father and personal representative of the estate of Kenneth Brian Releford. He brings this action on behalf of the estate pursuant to the Texas Wrongful Death/Survival Statute, TEX.

Civ. Prac. & Rem. Code § 71.021 and as applied through 42 U.S.C. §§ 1983, 1988.

3.      At the time of his death, Kenneth Brian Releford was 38. He was an honorably discharged Navy Veteran who died intestate. His father, Audry, is appearing as the representative of Kenny's estate, as well as in his (Audry's) individual capacity. Accordingly, Audry L. Releford, Jr. brings this action and seeks to recover damages under Tex. Civ. Prac. & Rem. Code § 71.021 and as applied through 42 U.S.C. §§ 1983, 1988.

4.      As a direct result of the policies, practices, customs, and procedures of the City of Houston, Decedent Kenneth Brian Releford was deprived of his constitutional rights to be free from unreasonable searches and seizures and excessive force. These rights are guaranteed by the Fourth Amendment and applied to the several states through the incorporation of the Fourth Amendment into the Fourteenth Amendment of the United States Constitution. *Wolf v. Colorado*, 338 U.S. 25, 27–28 (1949).

5.      Defendant Jason Rosemon, a City of Houston police officer acting in the course and scope of his employment with the City, and acting under

color of state law, unjustifiably shot Kenneth multiple times, killing him. Rosemon shot Kenny under circumstances where no reasonable police officer would have done so. Under long-established law on excessive force, a reasonable officer would have had fair notice that Kenny had a clearly established right to be free from the type of excessive force that was used against him. And so Jason Rosemon is not entitled to qualified immunity for these actions.

### B.     Jurisdiction and Venue

6.     This Honorable Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because the matter arises under the Constitution, laws, or treaties of the United States; specifically this claim seeks rights and remedies provided by the United States Constitution and 42 U.S.C. §§ 1983, 1988. *See also* 28 U.S.C. § 1331(a)(3).

7.     Supplemental jurisdiction over the pendant state-law claims is proper under 28 U.S.C. § 1367(a) because the state-law claims form a part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a)(1) and 1391(c) because all defendants reside in Texas and one or more defendants reside in this judicial district and, more specifically, this division of this judicial district. Further, as provided under 28 U.S.C. § 1391(b)(2), a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## C. Parties

9.      Plaintiff AUDRY L. RELEFORD, JR. is a resident of Texas. Plaintiff resides in Houston, Harris County, Texas. Plaintiff was a permanent resident of the State of Texas when the events or omissions giving rise to this lawsuit occurred. Plaintiff was the father of KENNETH BRIAN RELEFORD. The events giving rise to this lawsuit culminated with the death of KENNETH BRIAN RELEFORD. Accordingly, Plaintiff AUDRY L. RELEFORD brings this suit in his individual capacity and in his capacity as the Representative of the Estate of KENNETH BRIAN RELEFORD, his deceased son.

10. Decedent, KENNETH BRIAN RELEFORD, was a resident of Texas at the time of the events or omissions giving rise to this lawsuit occurred.

11. Defendant CITY OF HOUSTON is a municipal corporation operating according to the Constitution and the laws of Texas. It is located within the United States Southern District of Texas. The City of Houston has been served with process by serving the City Secretary, 900 Bagby, Houston, Texas 77002.

12. Defendant Jason Rosemon is a resident of Texas. Defendant Rosemon was served in person at 1200 Travis Street, Houston, Texas 77002.

### D. Facts

13. On or about October 11, 2012, uniformed City of Houston Police Officer Jason Rosemon shot and killed Kenneth Brian Releford — an unarmed civilian suffering from schizophrenia.

14. Upon information and belief, this shooting occurred shortly after midnight (12:01 a.m. on Thursday, October 11, 2012).

15.     At some time late in the evening on October 10, 2012, Houston Police received a call regarding a disturbance at a home in Houston's Third Ward.

16.     The disturbance was reported by a neighbor of Kenny Releford's.

17.     Kenny Releford lived alone at a home near by. Kenny's house was at 3321 Sampson, Houston, Texas.

18.     Houston Police Officer Jason Rosemon responded to the call.

19.     At the time of this incident, Jason Rosemon had been a Houston Police Officer for less than two years.

20.     Officer Rosemon responded to the call by himself.

21.     Upon arriving near the scene, Rosemon ordered Kenny out of his home.

22.     Witnesses made it known to Rosemon, to the extent he was not already aware, that Kenny suffered from mental illness.

23.     Kenny came to the front door of his home, raised his hands, and exited pursuant to Rosemon's instructions.

24.     At no time during the incident — from the time of Rosemon's arrival to the time of Rosemon's shooting — did Kenny have a weapon of any kind on or near his person or otherwise in his possession or within his reach.

25.     At no time during the incident — from the time of Rosemon's arrival to the time of Rosemon's shooting — did Kenny threaten Officer Rosemon, either by words or conduct.

26.     Kenny continued to respond to Rosemon's instructions, approaching Rosemon with his hands away from his body and visible.

27.     Rosemon told Kenny to stop. With his hands away from his body and visible — making it clear he did not have a weapon — Kenny questioned Officer Rosemon, asking him why he was being seized and (to paraphrase) "what he [Officer Rosemon] was going to do." As he questioned Officer Roemon, Kenny walked forward with his hands away from his body. So Officer Rosemon intentionally shot Kenny in the torso.

28.     Following Rosemon's first shot, Kenny fell to the ground.

29.     Kenny attempted to get up and stumbled to the other side of the street. Neighbors yelled at Officer Rosemon not to shoot again and that Kenny had mental problems. Instead Officer Rosemon shot Kenny again. Again in the torso.

30.     Following the multiple shooting, Kenny was transported to Ben Taub Hospital, where at approximately 1:48 a.m. he was declared dead.

31.     According to his death certificate, Kenny's cause of death was the two shots to the torso.

32.     Kenny Releford was the eighteenth person in 2012 known to have been shot to death by law-enforcement officers in Harris County, Texas.

33.     More specifically, this incident was not the first fatal shooting of an unarmed mentally ill Houstonian by a member of HPD.

34.     Less than one month before this incident, Houston Police shot and killed Brian Claunch, another unarmed mentally ill man. Media reports state that Mr. Claunch was a double amputee confined to a wheel chair and wielding nothing save a ball-point pen, when Houston police officers shot

him in the head. The shooting officer was cleared of wrongdoing by the Department.

35.     Also in September, Houston Police shot yet another unarmed mentally ill person — making Kenny the third known unarmed mentally ill victim of a Houston Police shooting between September 16, 2012 and October 11, 2012.

36.     Put another way, Kenny Releford was the third unarmed, mentally ill person shot — and the second killed — by the City of Houston in just 25 days.

### D.  Causes of Action

### 1. PLAINTIFF'S CIVIL-RIGHTS CLAIMS

37.     Plaintiff incorporates all preceding paragraphs by reference.

38.      The Ku Klux Klan Act of 1871 and its revisions, partially codified as 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in equity
or other proper proceeding for redress.

39.     Plaintiff alleges that Defendants, jointly, severally, or both, deprived

Plaintiff's son of his Fourth Amendment rights as incorporated and applied

to the states through the Fourteenth Amendment.

40.     Defendants violated Decedent's rights in the following ways:

a.   By using excessive and deadly force in the course of Officer
Rosemon's attempt to seize, arrest, search, or make an investigatory stop
of the Decedent. This excessive force was a violation of the Fourth
Amendment and its standard of reasonableness. Officer Rosemon shot
and killed Kenny unlawfully. Kenny's death resulted directly from a use
of force that was clearly excessive to the need, and was objectively unrea-
sonable;

b.   By failing to provide proper supervision to prevent such incidents of
excessive force;

c.   By failing to provide proper training to prevent such incidents of
excessive force; and

d.   By adopting polices that caused Decedent's death in violation of his
Fourth Amendment rights.

41.     Defendants' violations of the Constitutional rights of Decedent re-

sulted in Decedent's suffering and death and were a direct cause of Plain-

tiff's injuries.

**(A) PLAINTIFF'S FIRST CLAIM: 42 U.S.C. § 1983 —**

**PEACE-OFFICER LIABILITY: Unreasonable, Unjustified, and Excessive Use of Deadly Force**

42.     Plaintiff incorporates all preceding paragraphs by reference.

43.     Plaintiff brings a claim against Officer Rosemon, individually pursuant to 42 U.S.C. § 1983. With his § 1983 claim, Plaintiff seeks punitive damages against Officer Rosemon for unreasonable, unjustified, and excessive use of deadly force.

44.     Force is excessive, and thus violates the Fourth Amendment, if it is not reasonable in light of the circumstances facing the officer. *See Graham v. Connor*, 490 U.S. 386, 398 (1989).

45.     At all times material to this action, Officer Rosemon was acting under color of state law. He was an agent and employee of the City of Houston and clothed in the authority of state law. He was wearing his official police-department uniform and was acting in the course and scope of his employment at the time he shot and killed Kenny. That is, when he shot Kenny, he

was acting in his official capacity or exercising responsibility pursuant to state law.

46.     At the time of the incident, Officer Rosemon had no reason to believe that Kenny was either armed or dangerous. Kenny made no violent movements that Officer Rosemon or any reasonable person could interpret as being so threatening that deadly force would be needed to repel him. Kenny made no verbal threats to Officer Rosemon or any other person. Furthermore, it was clear that Kenny was unarmed and did not have any weapon on his person or readily at hand. In fact, after first shooting Kenny, it was clear that he was visibly wounded and unarmed. Instead of offering assistance to an unarmed man he had seriously wounded, Rosemon fired a second shot into Kenny's body.

47.     Officer Rosemon did not have a reasonable fear of imminent bodily harm when he shot and killed Kenny nor did Officer Rosemon have a reasonable belief that any other person was in danger of imminent bodily harm from Kenny. Shooting and killing Kenny was unwarranted and illegal under these circumstances.

48.     On the night of Decedent's death, no factors existed which would have granted license to Officer Rosemon to apply deadly force.

49.     Consequently, by using objectively unreasonable deadly force while acting under color of state law, Officer Rosemon violated Kenny's rights under the Fourth Amendment to the United States Constitution and caused his wrongful death.

**(B) PLAINTIFFS SECOND CLAIM: 42 U.S.C. § 1983 —**

**MUNICIPAL LIABILITY**

**1. The City of Houston has a Pattern and Practice of Authorizing and Allowing Excessive Force.**

54.     Plaintiff incorporates all preceding paragraphs by reference.

55.     The City of Houston is liable under 42 U.S.C. § 1983 for failing to supervise and train its police officers and for overlooking and disguising police misconduct. The City has a general official policy, pattern, or practice of not disciplining its police officers for their conduct, thereby sanctioning such actions by its police officers. By consciously deciding not to discipline its police officers, the City has created a policy by implication of overlooking constitutional violations.

56.     The City's failure to supervise and train its police officers, and its willful blindness to a long and wretched history of constitutional violations of its employees, amounts to deliberate indifference to the rights of the persons with whom the police come in contact, including citizens' right to be free from unreasonable search and seizure and the rights conveyed under the Texas Wrongful Death Statute as applied through 42 U.S.C. § 1983.

57.     Municipalities may also be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality. Even absent an officially adopted policy, the practice may be so well entrenched that it fairly represents an official municipal policy. *See Bd. of County Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

58.     Here, the City's formal and informal actions in overlooking, hiding, and tacitly encouraging police misconduct through other officers, the Internal Affairs Department, the Houston Police Chiefs, as wells as a line of mayors, reflect an official policy, practice, custom, and procedure — a policy which authorized and allowed the use of excessive force that violated the

constitutional rights of Kenny and caused his death. Further, other policies adopted by the City additionally allowed the excessive force and caused Kenny's death.

59.    Consequently, the City is liable for harm caused to others, such as Plaintiff, as a result of its policies, practices, customs, and procedures.

60.    Specifically, the City is liable for the constitutional torts of Officer Rosemon because the City sanctions the following nonexclusive list of customs, practices, and policies:

    a.  Using excessive, and often deadly force to carry out otherwise routine arrests, searches, and seizures;

    b.  Using deadly force when such force is neither necessary nor permitted by law;

    c.  Using deadly force too easily;

    d.  Using deadly force on citizens who do not possess weapons;

    e.  Ignoring the serious need for training and supervision of officers with respect to the use of force — new or additional training and supervision that, in light of the duties assigned to the City's officers and their previous wrongful conduct, was so obviously needed that not providing it amounted to deliberate indifference;

    f.  Adopting training regimes unsuited to prepare officers to adequately reach nonviolent solutions to nonviolent confrontations;

g. Failing to discipline those officers who are found to have engaged in the use of excessive force;

h. Failing to train officers about how to handle people who are suspected of being mentally ill;

i. Failing to train officers about when to use deadly force on people whom they suspect may be mentally ill;

j. Training officers to use deadly force on the mentally ill before it is legally justified;

k. Training officers to use deadly force before it is legally justified;

l. Adopting a hierarchy of responses that allows officers to use deadly force before it is necessary or legally justifiable;

m. Using procedures to investigate complaints of official misconduct designed to prevent detecting official misconduct;

n. Establishing a code of silence, where officers are discouraged from pointing out the wrongful conduct of other officers;

o. Failing to adequately train officers regarding the availability of alternative means of detaining suspects, other than the use of force or deadly force;

p. Failing to discharge officers who have shown a pattern or practice of using excessive force;

q. Failing to identify those officers likely to commit future violations of the use-of-force policy;

r.   Promoting officers accused of misconduct at a higher rate than officers not so accused;

s.   Instituting policies that prevent the City, County, State, and Federal Government from adequately investigating officer-involved shootings;

t.   Adopting a practice whereby officers who are unfit for peace-officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions;

u. Training officers to use deadly force too impetuously. That is, among other things, training officers to use deadly force when it would be more prudent to wait for backup to arise and handle the situation in a safer, more controlled manner;

v. Failing to train officers to use their stun guns or tasers rather than their handguns when dealing with an unarmed suspect; and

w. Dispatching rookie or otherwise inexperienced officers alone and without backup to situations that the officers don't have the experience to safely handle.

61.    At the time Officer Rosemon shot and killed Kenny, he was acting pursuant to an official city policy, practice, custom, and procedure to overlook or authorize a police officer's use of excessive force. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 659 (1978).

62.     And so, the City's official policy of overlooking and covering up police brutality was a direct cause of Plaintiff's injuries. In particular, the City's policy caused Kenny to be deprived of his constitutional rights to be free from unlawful seizures and objectively unreasonable force under the Fourth Amendment.

**2. The City Failed to Train or Supervise This Individual Officer.**

63.     Plaintiff incorporates all preceding paragraphs by reference.

64.     A city may also be held liable for its failure to train or supervise a single police officer when the officer's acts were so egregious or outrageous that the City should have had a clear warning that the particular officer posed a danger to its citizens.

65.     The City knew or should have known that Officer Rosemon posed an unreasonable risk of danger. By failing to properly discipline, supervise, or train Officer Rosemon, the City authorized or ratified Officer Rosemon's wrongful acts by acceptance of acts before and including Kenny's shooting.

66.     The City's acts and omissions, when viewed objectively, involve an unacceptable degree of risk, considering the probability and magnitude of the harm to the City's citizens. The City had actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Decedent and Plaintiff.

67.     Consequently, in light of the particular risks posed by Officer Rosemon, the City's failure to train or supervise Officer Rosemon constitutes deliberate and conscious indifference to the rights, safety, and welfare of others, including Kenny and Plaintiff.

### E.  Damages

68.     Plaintiff incorporates all preceding paragraphs by reference.

69.     In addition to the damages mentioned in the above paragraphs sustained as a direct and proximate result of the intentional and unlawful conduct of Defendants, Plaintiff has suffered and in reasonable probability will continue to suffer damages, as described in the following paragraphs. *See* TEX. CIV. PRAC. & REM. CODE § 71.001 *et seq.*

70.     Plaintiff Audry L. Releford, Jr., as Representative of the Estate of Decedent Kenneth Brian Releford, brings this survival action pursuant to TEX. CIV. PRAC. & REM. CODE § 71.021 as applied through 42 U.S.C. §§ 1983, 1988. As a direct and proximate result of Defendants' tortious acts and omissions, Decedent suffered pain and mental anguish from the time of the shooting until the time of his death. Decedent also incurred funeral expenses. This claim does not abate because of the death of Decedent and such claim is hereby made.

71.     Plaintiff Audry L. Releford, Jr. also brings this action pursuant to TEX. CIV. PRAC. & REM. CODE §§ 71.001–71.011 and as applied through 42 U.S.C. §§ 1983, 1988. Plaintiff is the statutory beneficiary and may bring this action for the wrongful death of his son. Under the Texas Wrongful Death Act, Plaintiff, as a surviving parent of Decedent, is entitled to recover damages for the following:

a.   Pecuniary loss resulting from the death of Decedent, including, but not limited to, the care, maintenance, support, services, education, advice, counsel, and reasonable contributions of a pecuniary value, that Plaintiff, as the surviving parent, would have received had Kenny survived;

b. Mental anguish suffered by Plaintiff, as the surviving parent, as a result of the death of Decedent, including but not limited to the emotional pain, torment, and suffering that Plaintiff has experienced and will continue to experience from the death of Decedent;

c. Loss of household services; and

d. Loss of inheritance for the earnings of Kenny in excess of the amount he would have used for the support of himself which in reasonable probability would have been added to his estate and left to his mother at his natural death had he lived.

### F. Attorney's Fees

72.    The Civil Rights Attorney's Fee Award Act of 1976 entitles Plaintiff

to recover his attorney's fees and costs. 42 U.S.C. § 1988. Plaintiff thereby

requests that the Court and jury award his attorney's fees and expenses.

### G. Jury Demand

73.    Plaintiff respectfully demands a jury trial pursuant to FED. R. CIV.

P. 38(b).

### H. Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully

requests that Defendants be cited to appear and answer herein, and that

Plaintiff have judgment against Defendants, jointly and severally, for actual

damages above the jurisdictional minimum of the Court, exemplary damages against all individual defendants, pre- and post-judgment interest, costs of court, attorney's fees and expenses, and all other and further relief to which Plaintiff is justly entitled, both at law and in equity.

Respectfully submitted,

**Walt Cubberly**

By: _/s/Walt Cubberly_____
Walt Cubberly
Fed Id. 2146308
Texas Bar No. 24069557
917 Franklin, Sixth Floor
Houston, Texas 77002
713-227-4444
713-236-1886 (fax)
WCubberly@SDRFirm.com

and

**FIBICH LEEBRON COPELAND
BRIGGS & JOSEPHSON, L.L.P.**

By: _/s/ Joseph C. Melugin_____
Joseph C. Melugin
Fed. Id. 876851
Texas Bar No. 24054038
1150 Bissonnet Street
Houston, Texas 77005
(713) 751−0025 Telephone
(713) 751−0030 Facsimile
jmelugin@fibichlaw.com


**ATTORNEYS FOR PLAINTIFF**

Certificate of Service

I certify that on December 29, 2014, this document was served by ECF electronic filing on opposing counsel.

_/s/ Walt Cubberly_