UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AUDRY L. RELEFORD JR., *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:14-CV-02810 |
| § | |
| CITY OF HOUSTON, *et al*, § | |
| § | |
| Defendants. § | |

## **MEMORANDUM & ORDER**

Defendant City of Houston ("the City") has filed a Motion to Amend the Court's February 29, 2016 Order to Certify for Permissive Appeal under 28 U.S.C. § 1292(b). ("City's Motion," Doc. No. 116.) After carefully considering the motion, response, reply, and the applicable law, the Court finds that the City's Motion should be denied.

**I.    BACKGROUND**

This case arises under 42 U.S.C. § 1983 and concerns the fatal shooting of Kenny Releford by Officer Jason Rosemon of the Houston Police Department ("HPD"). Plaintiff Audry Releford has sued Officer Rosemon and the City of Houston as Kenny's father and as the representative of Kenny's estate. Mr. Releford alleges that Officer Rosemon violated Kenny's constitutional rights by using excessive force against him. (Doc. No. 58 ¶ 42.) Mr. Releford further alleges that the City of Houston violated Kenny's constitutional rights by failing to properly supervise, train, discipline, or investigate its officers in the use of force and by adopting a custom or policy that caused Kenny's death in violation of his constitutional rights. (*Id.*)

The undisputed facts of this case are discussed at length in the Court's Memorandum and Order issued on February 29, 2016. ("Order," Doc. No. 93.) In summary, Officer Rosemon went

1

to Kenny's home after receiving a suspicious person call from dispatch. He got there shortly after midnight on October 11, 2012. Officer Rosemon expressed a need to speak with Kenny, who was either already outside or soon came out; Kenny then began to approach Officer Rosemon. At 12:09:14 a.m. and 12:10:24 a.m., Officer Rosemon radioed "shots fired," meaning that he had shot Kenny. At 1:48 a.m., Kenny was pronounced dead at the hospital. The parties dispute the facts leading up to the first shot and what happened between the two shots. Specifically, the parties dispute whether Officer Releford could see Kenny's hands—to know that he was not in fact holding a weapon—and whether he knew that Kenny suffered from mental health problems. (Doc. No. 93 at 1-2.)

Officer Rosemon and the City filed a motion for summary judgment. Among other evidence in the record, the Court reviewed an expert report by William Rathburn. Mr. Rathburn is the former Chief of Police of the Dallas Police Department and has nearly thirty years' experience as a police officer in Los Angeles and Dallas. Since leaving the Dallas Police Department, Mr. Rathburn has worked in the private sector as a security consultant. (Doc. No. 51, Ex. A at 34-36.) This Court rejected the Defendants' challenge to Mr. Rathburn's qualifications as an expert. (Doc. No. 94 at 15-17.) The Court then considered Mr. Rathburn's 31-page report, which in part discussed the City's findings of all intentional officer-involved shootings between 2009 and 2012 as justified. Based on the report and other evidence, the Court denied summary judgment for both Defendants, finding the governmental immunity defenses insufficient to bar Mr. Releford's claims as a matter of law. Officer Rosemon filed an interlocutory appeal to the Court's Order on the issue of immunity. (Doc. No. 95.)

After this Court released its order, the Fifth Circuit issued two opinions that the City deems crucial to this case: *Rodriguez v. City of Houston*, 2016 WL 3209225 and *Salazar-Limon*

*v. City of Houston,* 826 F.3d 272 (5th Cir. 2016). Both cases involve fatal shootings by HPD officers, in which the Fifth Circuit upheld summary judgment for the defendant officers and the City.[1] The City contends these cases open up a controlling question of law: "Does the mere fact that during a four-year period, all officer-involved shootings examined were found to be justified shootings, establish a culture of recklessness by the City?" (Doc. No. 116 at 6.) In light of the new opinions and the declared new question of law, the City requests that this Court amend its Order to certify for permissive appeal its denial of the City's motion for summary judgment.

## II.   LEGAL STANDARD

Interlocutory review is reserved for "exceptional" cases. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996). 28 U.S.C. § 1292(b) provides a narrow exception to the final judgment rule:

> Where a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge of the Court or Appeals or a judge thereof shall so order.

"Section 1292(b) is not a vehicle to question the correctness of a district court's ruling or to obtain a second, more favorable opinion." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006). "There are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000). *See also Estrada v. White*, No.

---

[1] The Fifth Circuit found that it did not need to discuss municipal liability in *Salazar-Limon* because the plaintiff failed to show a violation of his constitutional rights. 826 F.3d at 279.

2:14-CV-149, 2015 WL 4756916, at *2 (S.D. Tex. Aug. 12, 2015). The Fifth Circuit advises district judges to state "more than an abstract description of the legal questions involved or a bare finding that the statutory requirements of section 1292(b) have been met" in their certification of orders for interlocutory appeal. *Linton v. Shell Oil Co.*, 563 F.3d 556, 558 (5th Cir. 2009). Although the district court should identify a question, the Court of Appeals in its review may address all issues material to the order; it is not limited to the question certified by the district court. *See Ducre v. Exec. Officers of Halter Marine, Inc.*, 752 F.2d 976, 984 (5th Cir. 1985).

### III. DISCUSSION

#### A. Question of Law

"Appellate jurisdiction under § 1292(b) extends only to interlocutory orders that involve a controlling question of law." *Louisiana Patients' Comp. Fund Oversight Bd. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 585, 588 (5th Cir. 2005). As Judge Posner has noted, § 1292(b) refers to a "pure question of law rather than merely to an issue that might be free from a factual contest. The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Ahrenholz*, 219 F.3d at 676-77.

The City believes there is a simple question to be certified: "Does the mere fact that during a four-year period, all officer-involved shootings examined were found to be justified shootings, establish a culture of recklessness by the City?" (Doc. No. 116 at 6.) The City reaches this question by emphasizing a footnote in *Rodriguez*, which states: "Plaintiff's presentation of an expert report roughly comparing the City's percentage of sustaining complaints of excessive force to other municipalities does not establish a culture of recklessness." *Rodriguez* at *2, n 2.

4

The City argues that this footnote, along with the Fifth Circuit's holdings in *Rodriguez* and *Salazar-Limon,* prohibit a finding of municipal liability.

According to the City, Mr. Releford's theories of municipal liability fail for several reasons. First, relying on a bare statistic of the number of justified shootings is inconsistent with the Fifth Circuit's holding in *Rodriguez*. Second, Mr. Ratburn's analysis of the shootings in *Rodriguez* is inconsistent with the Fifth Circuit's holding in that case. And third, Mr. Releford's presentation of investigations of other officer-involved shooting cannot be evidence because, at the time Officer Rosemon shot Kenny, the investigations either had not been completed or their outcomes may have been unknown to Officer Rosemon. (Doc. No. 119 at 4-5.) These arguments do not free the City from municipal liability.

The first two arguments rely on the incorrect assumption that the Fifth Circuit's findings in *Rodriguez* must transfer to this case. The City suggests that, if the expert report did not show recklessness in *Rodriguez*, evidence regarding the City's investigations of officer-involved shootings cannot show a culture of recklessness in this case either. Although the conclusions in the two expert reports are similar, the methodologies are distinct. The expert referenced in *Rodriguez,* G. Patrick Gallagher, compared HPD's investigations of off-duty officer shootings to the New York Police Department's. *See Rodriguez v. City of Houston*, 4:12-cv-00501, Doc. No. 98 at 14-15. The *Rodriguez* Court found this insufficient to show a culture of recklessness. *See Rodriguez* at *2, n 2. Like Mr. Gallagher, Mr. Rathburn examined and expressed concern over HPD's investigations after officer-involved shootings. Howver, he did not justify his conclusions based on comparisons between HPD and other police departments. His report discusses HPD's investigative process, the circumstances of several officer-involved shootings, communications among officers, and HPD's officer training policies and practices. (Doc. No. 51, Ex. A.)

5

Mr. Rathburn's data and analysis were not identical to Mr. Gallagher's. The *Ramirez* court's finding that Mr. Gallagher's report failed to establish a culture of recklessness does not mean that the evidence in this case is deficient. This question regarding sufficiency of evidence is better left to the trier of fact.

The City lastly argues that Mr. Releford cannot rely on several specified post-shooting investigations as evidence of a custom or policy for which the City can be held liable. "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). The "moving force" requirement can be thought of as "a direct causal link between the policy and the violation." *Id.* at 848. The City argues that the investigations and shootings that occurred after Kenny's death could not have influenced Officer Rosemon, and Officer Rosemon was not necessarily influenced by prior HPD investigations that declared shootings to be justified. But answering what Officer Rosemon could, should or did know requires opening up the record and discussing questions of fact. This inquiry would take the Court of Appeals beyond a question of law, and is better left for the jury.

The City's arguments oversimplify the Court's reasons for denying summary judgment. The City's proposed question assumes that the Court relied solely on one section of Mr. Rathburn's report in finding that the City may be held liable, and that Mr. Rathburn relied only on the fact that all officer-involved shootings were found to be justified in his conclusion that the City acted recklessly. Both assumptions are incorrect. If this Court were to revise the question to recognize the full scope of the record it relied upon, it would no longer be able to present a pure question of law. Any appropriately nuanced question would require the Court of Appeals to

examine the full record for various theories of municipal liability, defeating the purpose of interlocutory review.

### B. Controlling Question & Speed of Litigation

The question for interlocutory appeal must not only be one of law but also controlling. "Whether an issue of law is *controlling* generally hinges upon its potential to have some impact on the course of the litigation." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006). This is closely related to the requirement that the interlocutory appeal materially advance the termination of the litigation. Defendants argue that an appellate decision in their favor will entitle the City to summary judgment, thus terminating litigation against the City.

The Court disagrees. Even if the Fifth Circuit answers the City's question in its favor, the City may still be held liable. First, the Court did not rely solely on the absence of findings of unjustified shootings to determine that there may be a culture of recklessness. This Court considered Mr. Rathburn's entire report, analysis of other shootings, deposition testimonies, and other information from the record. To resolve questions about municipal liability based on policy or practice, the Court of Appeals must answer more than the City's proposed question.

Second, Mr. Releford raised an inadequate training argument that remains under consideration. (Doc. No. 94 at 18.) Officer George Guerrero's deposition testimony exposes an unresolved question about the City's policy of when force can be used, and how HPD presents that policy to its officers. Officer Guerrero declares that an HPD officer is authorized to use deadly force only when the officer can articulate fear of serious bodily injury. First, Officer Guerrero states the officer's fear must be reasonable. (Doc. No. 83, App'x I, Ex. 20 at 191:23-24). Shortly after, he says the officer needs to explain his fear, but it does not have to be reasonable. (*Id.* at 193:1-19). The City's policy and the articulation of that policy to its officers

are relevant in determining municipal liability. Deposition testimony from various witnesses, including Officers Guerrero and Rosemon and Assistant Chief Mattie Provost, leave open questions that are material to the failure to train claim. This theory will continue to be debated, regardless of the outcome of an interlocutory appeal.

Although a favorable appellate decision for the City on its proposed question may narrow the scope of evidence or issues, it will not result in automatic summary judgment for the City. The case could continue to proceed to trial. Therefore the question is not controlling and would not promise to hasten the termination of litigation.

### C. Substantial Ground for Difference of Opinion

Courts have found substantial ground for difference of opinion in cases where "a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue." *Ryan*, 444 F. Supp. 2d at 723–24. The City declares there is disagreement between Defendants and this Court over "whether there is some numeric test or threshold for determining if a city has committed unconstitutional acts." (Doc. No. 116 at 11.) In citing cases that reject numerical tests, the City suggests that this Court denied summary judgment for the City on the basis of a single numeric threshold. That is not so. The Court relied on the entire record—not one point of data from one expert report—in its decision.

Although a jury or the Court of Appeals may ultimately find no municipal liability for the City, that possibility does not create the requisite "substantial grounds" here. The Court recognizes that the *Ramirez* and *Salazar-Limon* courts did not hold the City liable in those officer-involved shooting cases. But this Court's different finding, when it had a different record available to it, does not constitute disagreement with all appellate rulings on the issue.

## IV.     CONCLUSION

For the aforementioned reasons, this Court **DENIES** the City's Motion.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this 5th day of December, 2016.

								_____
								HON. KEITH P. ELLISON
								UNITED STATES DISTRICT JUDGE